UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 1:17-CR-40-HAB |
| ) | |
| TORRENCE LARRY, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Defendant Torrence Larry is facing gun and drug charges as set forth in a six-count Superseding Indictment.[1] This matter comes before the Court on Defendant's Motion to Suppress Evidence and request for a *Franks* Hearing pursuant to *Franks v. Delaware,* 438 U.S. 154 (1978) (ECF No. 101), filed on November 18, 2020. The Government filed its Opposition to Defendant's Motion to Suppress Evidence and Request for *Franks* Hearing (ECF No. 64) on December 1, 2020. Defendant replied on December 7, 2020. (ECF No. 105).

In his Motion, Defendant challenges the issuance of a state search warrant that authorized law enforcement to conduct a search of his residence at 5507 Brazo Lane, Fort Wayne, Indiana. Defendant challenges the probable cause determination of the Magistrate Judge as well as the statements of the affiant in the search warrant affidavit. Defendant argues that the search warrant would not have been issued if the detective providing the affidavit in support provided thorough and accurate information regarding the reliability of the confidential informant working the case. In response, the Government asserts that Defendant has not made the substantial preliminary

---

[1] As the Government correctly points out, Superseding Counts 1, 2 and 3 are based on controlled buys and not based upon evidence seized during the execution of the search warrant.

showing necessary to obtain a *Franks* hearing and that the Magistrate Judge's probable cause determination was sound.

Having reviewed the parties' filings, the Court determines that no *Franks* hearing is warranted and the Motion to Suppress based on the absence of probable cause in the search warrant affidavit is DENIED.

## SEARCH WARRANT AFFIDAVIT

On June 19, 2017, Detective Jamie Masters of the Fort Wayne Police Department ("FWPD") submitted a Search Warrant Affidavit (ECF No. 101-1) to the Allen County, Indiana, Superior Court seeking a "no knock" search warrant for Defendant's residence. The facts underlying the request for the warrant began with an undercover investigation commencing on May 17, 2017. At that time, a confidential informant (CI-1817) arranged to purchase $50 worth of crack-cocaine and $50 worth of heroin from a male black the CI knew as "Torrence." CI-1817, who was known to Det. Masters to have provided credible and reliable information in the past leading to both arrests and convictions, advised that Torrence lived at 5507 Brazo Lane[2] in Fort Wayne, Indiana, and drove a black Cadillac bearing Indiana license plate 216MZI.[3] Thereafter, Det. Masters conducted a pre-buy search of CI-1817 and the CI's clothing and fitted the CI with an electronic monitoring/recording device. CI-1817 further advised Det. Masters that he/she communicated with "Torrence" via phone number 260-445-0534.

Det. Masters supplied CI-1817 with $100 of pre-recorded buy money and took CI-1817 to the area of 5507 Brazo Lane. CI-1817 was under continual visual surveillance as the CI walked to the door of the Brazo Lane address and was observed entering the residence after knocking. Inside

---

[2] The Brazo Lane address is located in a trailer park.
[3] The license plate number returned to 7006 Bradbury Ave., Ft. Wayne, IN.

2

the house, CI-1817 noted that Torrence was the sole person inside. CI-1817 handed Torrence the $100 in pre-recorded buy money. Torrence left CI-1817's view and returned shortly after with a corner piece of a plastic baggie containing an off-white rock-like substance suspected to be crack-cocaine and a clear plastic baggie containing a brown rock-like substance suspected to be heroin. CI-1817 then exited the trailer and was under constant visual surveillance until returning to Det. Masters. CI-1817 handed Det. Masters the two plastic baggies, a post-buy search of CI-1817 revealed no illegal currency or contraband, and the recording device was removed. The substances CI-1817 provided to Det. Masters field-tested positive for cocaine and heroin with respective bag weights of 0.5 and 0.9 grams.

CI-1817 participated in two additional controlled buys occurring on May 30, 2017, and June 15, 2017. These transpired in much the same way as the first buy. On both these occasions, CI-1817 advised Det. Masters that Torrence was using phone number 260-445-0534 to communicate with the CI. Prior to completing the May 30, 2017, controlled buy, CI-1817 provided Det. Masters with text communications between that phone number and CI-1817. The message stated, "U good going to need 50 and 50 when I get off around 1 or 2." A response was received of "ok." Additionally, prior to this May 30 controlled buy, Det. Masters presented CI-1817 with a 6-person photo array with each photo shown individually to the CI. After viewing all the photos, CI-1817 identified the person in photo 5 as the person the CI knew as "Torrence" at 5507 Brazo Lane. The person in photo 5 was Torrence Larry.

In both the latter purchases, pre-buy and post-buy searches were conducted of CI-1817 and the CI was fitted with an electronic monitoring/recording device. CI-1817 was also provided with pre-recorded buy money and dropped off in the vicinity of 5507 Brazo Lane. The CI was under continuous visual surveillance as the CI walked to the door of 5507 Brazo Lane and was let inside.

3

Additionally, CI-1817 was under continual visual surveillance upon exiting the residence until the CI returned to Det. Masters. Following each buy the CI advised Det. Masters of events occurring inside the house. On both the latter occasions, CI-1817 handed Det. Masters the suspected cocaine and heroin, which later field tested positive for the presence of controlled substances.

On June 13, 2017, two days prior to the last controlled buy, CI-1817 contacted Det. Masters to advise that exterior cameras had been installed at 5507 Brazo Lane. CI-1817 further advised that on June 2 or 3, 2017, Torrence showed CI-1817 a black semi-automatic handgun, believed to be a 9mm, with a 50 round magazine. CI-1817 advised Det. Masters that Torrence indicated he had the handgun to "take care" of any problems that arise.

Based upon these facts in the affidavit, on June 19, 2017, the state court Magistrate Judge found probable cause to believe that controlled substances and records of drug transactions may be concealed at 5507 Brazo Lane. Additionally, the Magistrate Judge concluded that reasonable suspicion existed to believe that the executing officers may be in danger during the search and authorized the search to be conducted without the officers announcing their presence. Upon execution of the warrant (which occurred 8 days later on June 27, 2017), officers located a .45 cal. Glock semi-automatic handgun; three .45 cal. single stack handgun magazines loaded with ammunition; assorted boxed and loose ammunition; cocaine and methamphetamine; digital scales; cell phones; United States Currency and a video recording surveillance system.

## LEGAL ANALYSIS

**A.    Standard of Review under *Franks***

Search warrant affidavits are presumed to be valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). However, a search warrant is invalid if police officers obtain it by deliberately or recklessly providing the issuing court with false, material information. *United States v. McMurtrey*, 704 F.3d

502, 504 (7th Cir. 2013). In *Franks v. Delaware*, the Supreme Court defined the procedure, evidentiary burdens, and proper remedies associated with a defendant's attack on the truthfulness of statements made in a sworn affidavit supporting the issuance of a search warrant. To obtain a *Franks* hearing, the defendant must make a "substantial preliminary showing" of (1) a material falsity or omission that would alter the probable cause determination, and (2) a deliberate or reckless disregard for the truth. *McMurtrey*, 704 F.3d at 508. "These elements are hard to prove, and thus *Franks* hearings are rarely held" because a defendant seeking a *Franks* hearing "bears a substantial burden to demonstrate probable falsity." *United States v. Maro*, 272 F.3d 817, 821 (7th Cir. 2001) (citations omitted). "Conclusory, self-serving statements are not enough to obtain a *Franks* hearing." *United States v. Johnson*, 580 F.3d 666, 671 (7th Cir. 2009) (citing *Franks*, 438 U.S. at 171). Allegations of falsehood or reckless disregard for the truth must be "accompanied by an offer of proof." *Franks*, 438 U.S. at 171.

The Seventh Circuit has interpreted the holding of *Franks* to also apply to omissions. *United States v. Williams*, 737 F.2d 594, 604 (7th Cir. 1984) (internal citations omitted). Therefore, a defendant may also challenge an affidavit by showing that the affiant intentionally or recklessly omitted material information. *See id.*; *see also Shell v. United States*, 448 F.3d 951, 958 (7th Cir. 2006); *United States v. Pace*, 898 F.2d 1218, 1232–33 (7th Cir. 1990).

**B.     Defendant's Request for a *Franks* Hearing[4]**

The Defendant asserts that the search warrant affidavit contained unverified and unreliable hearsay statements from CI-1817 to Det. Masters relating to camera installation on the Defendant's

---

[4] At first glance, the Defendant's motion does not appear to be a true *Franks* hearing request as it does not appear to contest the veracity of the statements of the affiant or assert that she made false allegations. Rather, it would appear throughout the briefing that the Defendant is really contesting whether the Magistrate Judge had sufficient information regarding the reliability of the CI to justify his probable cause determination. However, because the Defendant has raised the issue, the Court shall address the request for a *Franks* hearing out of an abundance of caution.

property and seeing the Defendant with a 9mm handgun. The Defendant further contends that Det. Masters omitted basic information regarding the investigation, how the CI became involved with it, and the CI's criminal history. These omissions combined with the unverified statements of the CI, the Defendant believes, would have been critical to the Magistrate Judge's assessment of the CI's reliability and ultimately would have led the Magistrate Judge not to issue the search warrant. Thus, he requests a *Franks* hearing to further challenge the veracity of the statements in the affidavit and contest the search warrant.

As set out above, a defendant seeking a *Franks* hearing bears a substantial burden and, here, that high standard necessary under *Franks* to warrant a hearing has simply not been met. The Defendant has not put forth any offer of proof that contains anything other than unsworn conclusory statements (presumably by the Defendant but that is unclear) that certain information was omitted. What's more, he has not presented any evidence, either direct or circumstantial, of the affiant's state of mind regarding the allegedly omitted information. *See United States v. Daniels,* 906 F.3d 673 (7th Cir. 2018) ("To secure a *Franks* hearing, a defendant must put forth 'an offer of proof' that is 'more than conclusory' and gestures toward more than negligent mistakes."); *United States v. Glover*, 755 F.3d 811, 820 (7th Cir. 2014) (requiring "direct evidence of the affiant's state of mind" or else "circumstantial evidence of a subjective intent to deceive"). Thus, on this basis alone, the Court cannot authorize a *Franks* hearing.

However, even setting this crucial procedural hurdle aside and crediting the statements in the brief, the Defendant still fails to provide the Court with a basis for a *Franks* hearing. The Defendant sets out a number of what appear to be random facts regarding CI-1817's ongoing relationship with the Defendant. The Defendant claims to know with certainty the identity of CI-1817 (the Government does not argue the point), identifies him by name, states that he lives in the

6

same trailer park as the Defendant, and indicates that the CI performed repair work on the Defendant's trailer, including installing the security cameras he told Det. Masters had been installed. There is also a reference to CI-1817's girlfriend being in fear of the Defendant.[5] What the Defendant doesn't do is connect these random facts to false statements or knowing omissions by Det. Masters. There is nothing, not even the slightest allegation, that Det. Masters was aware of these facts, or that despite being aware, she omitted them from the affidavit intentionally or recklessly. An omission without a corresponding assertion of intentionality, recklessness, or a demonstration of materiality does not create a basis for a *Franks* hearing.

Defendant makes much of the fact that Det. Masters omitted the CI's prior criminal history, that the CI contacted Det. Masters seemingly "out of the blue" to inform her that cameras were installed[6] and that the Defendant showed him a gun. He questions the veracity of the statements made to Det. Masters regarding the gun, in part, because the gun CI-1817 claimed the Defendant showed him was not ultimately recovered during the search of the residence. Defendant further argues that CI-1817 had motive to lie about the gun and "fabricate evidence" to protect his girlfriend. Defendant urges that because of this false information from the CI regarding the gun, the Magistrate Judge felt compelled to authorize the no-knock warrant.

It bears emphasis again that the appropriate inquiry in determining whether a *Franks* hearing is warranted is whether the officer who signed the application for search warrant under oath made a false statement knowingly or intentionally, or with reckless disregard for the truth. Indeed, in a *Franks* hearing, the CI's credibility is not directly at issue. Instead, it is the credibility

---

[5] The CI's girlfriend, it is alleged, house sat for the Defendant while he was out of town and when he returned a safe in his home had scratches on it as if someone had attempted to pry it open.

[6] Even assuming the Defendant is correct that CI-1817 performed the install of the security cameras, it does not invalidate Det. Masters statement in the affidavit that she was told cameras were, in fact, installed. *Who* installed them seems beside the point.

7

of *the affiant* (i.e., the officer submitting the affidavit) that matters. Impeaching the veracity of *the informant* does not get the job done. An informant may have lied to the officer; but, unless the swearing officer had knowledge of the lie or ignored information indicating that the informant lied, it matters not a wit. *United States v. Jones,* 208 F.3d 603 (7th Cir. 2000); *United States v. McAllister*, 18 F.3d 1412, 1417 (7th Cir. 1994) ("[T]he fact that a third party lied to the affiant, who in turn included the lies in a warrant affidavit, does not constitute a *Franks* violation. A *Franks* violation occurs only if the affiant knew the third party was lying, or if the affiant proceeded in reckless disregard of the truth.") (quoting *United States v. Pritchard,* 745 F.2d 1112, 1119 (7th Cir. 1984); *see also*, *United States v. Brown*, 3 F.3d 673 (3rd Cir. 1993) ("It is well-established that a substantial showing of the *informant's* untruthfulness is not sufficient to warrant a *Franks* hearing."). Here, there is no evidence that Det. Masters intentionally or recklessly misled the magistrate by omitting information concerning the CI's background just as there is no evidence that she had reason to disbelieve the CI's statements that he personally observed the Defendant with a firearm.

Finally, the Defendant's quest for a hearing fails for a more simplistic reason: there is no showing of materiality. The FWPD conducted three controlled buys from Defendant using CI-1817. The Court has no difficulty finding that the controlled buys were sufficient to establish probable cause independent of the additional facts Defendant believes should have been included in the Affidavit. *See, e.g., United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006). As the court more fully explains *infra,* the three controlled buys occurring at the residence, by themselves, provided enough indication of CI-1817's reliability to justify a search warrant for the residence. So whatever omissions the Defendant is now complaining might have made a difference (even if true and intentionally omitted) do nothing to alter the landscape that CI-1817 was observed by Det.

Masters making three controlled buys from the Defendant's residence and identified the Defendant as the person making the sales. *See United States v. Pritchard,* 745 F.2d 1112, 1116 (7th Cir. 1984) (holding that inaccuracies or omissions were "insufficiently substantial to undercut the validity of the search warrant as a whole"). Accordingly, no *Franks* hearing is warranted.

**C.    Probable Cause Determination**

Having found that no *Franks* hearing is warranted, the only remaining question presented by the Defendant's motion is whether the totality of the circumstances supported the Magistrate Judge's probable cause determination. This Court defers to the warrant-issuing judge's determination of probable cause if there is substantial evidence in the record to support the decision. *United States v. Koerth,* 312 F.3d 862, 865 (7th Cir. 2002). When an affidavit is the only evidence presented to a judge to support a search warrant, as it is here, the validity of the warrant rests solely on the strength of the affidavit. *United States v. Orozco,* 576 F.3d 745, 748 (7th Cir. 2009). A search warrant affidavit establishes probable cause when, based on the totality of circumstances, it "sets forth sufficient evidence to induce a reasonably prudent person to believe that a search will uncover evidence of a crime." *United States v. Mykytiuk,* 402 F.3d 773, 776 (7th Cir. 2005) (citing *United States v. Peck,* 317 F.3d 754, 755–56 (7th Cir. 2003), and *Illinois v. Gates,* 462 U.S. 213, 238 (1983)). "The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Sims,* 551 F.3d 640, 644 (7th Cir. 2008) (ellipsis and brackets omitted).

When the facts and circumstances submitted in the affidavit are derived from a confidential informant, the legitimacy of a probable cause determination turns on the informant's reliability, veracity and basis of knowledge. *United States v. Olson,* 408 F.3d 366, 370 (7th Cir. 2005). To

9

assess credibility, the Court considers whether the informant: (1) had firsthand knowledge; (2) provided sufficient details; (3) relayed information which was subsequently corroborated; and (4) testified at a probable cause hearing. *Id*

The Government concedes that CI-1817 did not testify at a probable cause hearing but argues, correctly, that the remaining factors more than support the Magistrate Judge's conclusions relating to probable cause and the issuance of the no-knock warrant. *See United States v. Brack*, 188 F.3d 748, 756 (7th Cir. 1999) ("[A] deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability."). There is no question that the Government has made a strong showing demonstrating the reliability of CI-1817's information.

In the month before the issuance of the search warrant, the CI provided Det. Masters with information that he could purchase drugs from the Defendant, identified the Defendant's residence, the license plate number for the vehicle he drove, and a phone number that he used to communicate with him. This information was all corroborated by Det. Masters. Additionally, the CI chose the Defendant from a photo array, further identifying him as the individual from whom he purchased drugs. Most importantly, CI-1817 participated in three controlled buys where the CI was surveilled to and from the Defendant's residence, searched pre-buy and post-buy and equipped with a recording device. Each of these controlled buys and the procedures utilized by law enforcement further provided independent and contemporaneous corroboration of the CI's reliability. *See United States v. Orr*, 969 F.3d 732, 737 (7th Cir. 2020) ("Generally, a controlled buy, when executed properly, is a reliable indicator as to the presence of illegal drug activity.") (quoting *United States v. Sidwell*, 440 F.3d 865, 869 (7th Cir. 2006)); *United States v. McKinney*, 143 F.3d 325 (7th Cir. 1998) ("[C]ontrolled buys add great weight to an informant's tip.").

The decision in *United States v. Singleton*, 125 F.3d 1097 (7th Cir. 1997), further confirms the appropriateness of the Magistrate Judge's probable cause determination here. In that case, the Seventh Circuit found significant the fact that the informant's conversations with law enforcement, while perhaps general, were based on his personal observations. Additionally, the court found critical two buys which formed the basis of the warrant affidavit. In both buys, pre- and post-buy searches were conducted by police, the informant was driven to the destinations and there was constant audio corroboration of the informant's actions. On these facts, the court concluded there was "clearly independent, often contemporaneous, police corroboration" supporting the probable cause determination. *Id.* at 1104.

Nearly analogous facts to those in this case were also present in *United States v. Cooper*, No. 1-09-CR-51-TS, 2009 WL 3305616 (N.D. Ind. Oct. 14, 2009), *aff'd*, 485 F. App'x 826 (7th Cir. 2012). There, as here, the defendant argued that the warrant affidavit lacked sufficient indicia of the CI's reliability to establish probable cause. The warrant affidavit in that case, like the one here, was based primarily on controlled buys by a CI. The defendant argued that the CI's statements to the affiant that he could buy drugs from the defendant were insufficient by themselves to establish probable cause. However, the court, while acknowledging that probable cause would be lacking under those limited circumstances, noted that "the Affidavit contains much more information than a simple tip provided by an informant – it contains details of four controlled drug purchases by [the CI]." *Id.* at *4. Similar to this case, the CI in *Cooper* identified the defendant by photo and was checked for contraband, given marked money, outfitted with an electronic monitoring device, and observed going inside the house where the buy was to take place, remaining for a short time, and then returning to police with the suspected contraband. Based on all this, the court concluded, "Detective Brown's Affidavit contains more than bare bones conclusions and the

11

statements of an untested informant. It provides details of four separate controlled drug buys …the Court finds that the Affidavit provides sufficient reason for crediting the source of the information." *Id.* at 5.

Nevertheless, Defendant again asserts that the exclusion of various details from the affidavit, namely how CI-1817 knew the Defendant, that CI-1817 performed work for the Defendant, the CI's girlfriend's relationship with the Defendant, and the absence of CI-1817's criminal history,[7] played a crucial part in the Magistrate Judge's assessment of the CI's reliability. He also again emphasizes that the CI's statement to Det. Masters that the Defendant showed him a gun is not borne out by the fruits of the search thereby demonstrating the unreliability of the statement. This Court finds none of these arguments persuasive.

Working backwards in time, by the time CI-1817 notified Det. Masters that he had personally observed the Defendant with a gun, he had already performed two controlled buys, picked the Defendant from a photo array and provided other corroborated information about the Defendant's drug activities. In essence, CI-1817 had already proven to be credible and reliable with respect to the investigation. Defendant offers nothing relating to the CI's background with the Defendant, his criminal history or his alleged motive to lie to protect his girlfriend that negates the probable cause already established by the controlled buys. Moreover, any uncertainty about the veracity of the CI's statement regarding the gun must be considered as part of the totality of the circumstances. The totality of the circumstances demonstrated that the CI had a track record in this investigation of providing truthful and reliable information. Thus, the Court cannot conclude that the Magistrate Judge erred in issuing the no-knock warrant based upon the CI's statement to Det. Masters that the Defendant showed him a gun along with a large capacity magazine and stated

---

[7] The Defendant contends that CI-1817 has two prior convictions, one from 2002 for residential entry and a more recent conviction for burglary.

12

that the gun was to "take care" of any problems. *Franks,* 438 U.S. at 164–65 ("…[P]robable cause may be founded upon hearsay and upon information received from informants…")

Finally, the Defendant has not demonstrated that the absence of the CI's criminal history would have been material to the underlying probable cause determination. "[M]agistrate judges ... often know, even without an explicit discussion of criminal history, that many confidential informants 'suffer from generally unsavory character' and may only be assisting police to avoid prosecution for their own crimes." *United States v. Veloz*, 948 F.3d 418, 428 (1st Cir.), *cert. denied,* 141 S. Ct. 438 (2020) (quoting *United States v. Avery*, 295 F.3d 1158, 1168 (10th Cir. 2002). Here, the other available facts in the Affidavit rendered the undisclosed information regarding the CI's prior criminal history of minor significance in the "probable cause calculus." *See United States v. Stewart*, 337 F.3d 103, 106 (1st Cir. 2003); *Orr*, 969 F.3d at 738 (rejecting the Defendant's argument that the omission of the informant's criminal behavior and substance abuse from the affidavit was fatal to the warrant). Accordingly, the Court finds, based on the totality of circumstances, that the Affidavit set forth sufficient evidence to induce a reasonably prudent person to believe that a search of the Defendant's residence would uncover evidence of drug related crimes. The Motion to Suppress based on the absence of probable cause is DENIED.

**D.   Staleness**

Defendant's final argument is that the officers unreasonably delayed the execution of the warrant. The warrant was signed by the Magistrate Judge on June 19, 2017, and executed eight days later on June 27, 2017. The parties agree that this time frame is within the ten-day time frame for warrant execution prescribed in Ind. Code § 35-33-5-7.

The Defendant provides little in the way of argument or legal authority to support his argument. All he states is that "police expressed to the court that they believed drugs were being

13

sold from 5507 Brazo Lane and that the occupant had a handgun with a 50-round clip. That is an enormous amount of fire power. Yet, they waited 8 days." (ECF No. 101 at 12). In response, the Government, citing to various authorities, asserts that a delay in the execution of a warrant is permissible when, as was the case here, ongoing criminal activity is suspected. *United States v. Watzman*, 486 F.3d 1004, 1008 (7th Cir. 2007). Alternatively, the Government argues that pursuant to *United States v. Leon,* 468 U.S. 897, 922-23 (1984), even if somehow the Court concluded that the warrant was stale, the police officers were entitled to rely on the search warrant when they executed it. *See United States v. Harris,* 255 F.3d 288, 293–94 (6th Cir.2001) (noting that a reasonable officer would believe probable cause existed four days after warrant issued given evidence of ongoing drug activity).

The Court agrees with the Government on both points. There was no realistic threat that probable cause would cease by the time the warrant was executed especially given the knowledge that the CI had made three drug purchases from that residence in a month's time. Defendant has not provided the Court any convincing argument (or any argument) to the contrary. Accordingly, the Court concludes that the delay in the execution of the warrant was reasonable and even if it was not, the *Leon* good-faith exception applies to shield the officers for their good faith reliance on the warrant.

## CONCLUSION

For the foregoing reasons, Defendant's Request for a Franks Hearing and Motion to Suppress (ECF No. 101) is DENIED.

SO ORDERED on January 5, 2021.

    s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT

14